IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

POLLY P. WALLER,                          )
                                          )
                 Plaintiff,               )        Civil No. 05-376-JO
                                          )
         v.                               )        OPINION AND ORDER
                                          )
COMMISSIONER, SOCIAL SECURITY             )
ADMINISTRATION,                           )
                                          )
                 Defendant.               )

        Linda S. Ziskin
        LINDA S. ZISKIN, ATTORNEY AT LAW
        3 Monroe Parkway, Suite P
        Lake Oswego, OR  97035

         Attorney for Plaintiff

        Neil J. Evans
        UNITED STATES ATTORNEY'S OFFICE
        1000 S.W. Third Avenue, Suite 600
        Portland, OR  97204-2902

David M. Blume
Lucille G. Meis
Nancy A. Mishalanie
SOCIAL SECURITY ADMINISTRATION
701 Fifth Avenue
Suite 2900, M/S 901
Seattle, WA  98104-7075

    Attorneys for Defendant

JONES, Judge:

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

denying her application for disability insurance benefits ("DIB") under Title II, and

Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security

Act.  *See* 42 U.S.C. §§ 401-33, 1381-83f.  This court has jurisdiction to review the

Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a careful review of the

record, I conclude that the case must be remanded for further proceedings under sentence four of

42 U.S.C. § 405(g).[1]

## ADMINISTRATIVE HISTORY

Plaintiff, Polly Waller, was born on July 25, 1951; she was therefore forty-eight years old

on June 9, 2000, the date of her alleged disability.  Tr. 98.  Waller completed high school, as

well as art school, and at least three years of college.  Tr. 109.  Just prior to the onset of her

---

[1]  In Shalala v. Shaefer, the Supreme Court held that the fourth and sixth sentences of
42 U.S.C. § 405(g) set forth the "exclusive methods" for remanding a case to the Commissioner.
509 U.S. 292, 296 (1993) (citing Melkonyan v. Sullivan, 501 U.S. 89, 99-100 (1991)); *see also*
Akopyan v. Barnhart, 296 F.3d 852, 854 (9th Cir. 2002) (citing Shaefer, 509 U.S. at 296).  A
"sentence four" remand is a final judgment on the merits, so that the district court relinquishes
jurisdiction over the case.  *See*  Forney v. Apfel, 524 U.S. 266, 269 (1998) (citations omitted)
(holding that judgment following a "sentence four" remand is final and appealable); *and see*
Akopyan, 296 F.3d at 854 (citing Shaefer, 509 U.S. at 297).

2 - OPINION AND ORDER

disability, Waller taught art classes to children and adults on a part-time basis; she reported that she had to stop working because of an increase in the severity of painful muscle spasms in her neck and back, which were triggered by upper body movements, and because of pain and numbness in her right arm and hand. Tr. 103-04.

Waller protectively filed her application for DIB on June 19, 2000, and her application for SSI disability benefits on September 6, 2000. She alleges that as of June 9, 2000, she is disabled due a combination of impairments which include scoliosis, carpal tunnel syndrome, tendonitis, a right rotator cuff tear and which cause her to suffer painful muscle spasms in her neck and back.[2] Tr. 103. Her applications were denied initially and on reconsideration. Tr. 15, 49-53, 267-71. Waller requested a hearing, which was held before an Administrative Law Judge ("ALJ") on October 9, 2002. Tr. 15, 26-48. Waller, who was represented by a non-attorney representative, appeared and testified, as did Elayne Leles, a vocational expert ("VE"). Id. On December 3, 2002, the ALJ issued a decision denying Waller's applications, finding that she was not disabled as defined by the Social Security Act, and therefore she was not entitled to a period of disability or to DIB, and she was not eligible to receive SSI payments. Tr. 24. The ALJ's decision became the final decision of the Commissioner on January 14, 2005, when the Appeals Council declined review. Tr. 4-6; *see* 20 C.F.R. §§ 404.981, 416.1481, 422.210.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole.

---

[2] Citations to the official transcript of record filed with the Commissioner's Answer (# 7) on July 21, 2005, are referred to throughout as "Tr."

42 U.S.C. § 405(g); *see also* <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." <u>Tylitzki v. Shalala</u>, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must

weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion."

<u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be

upheld if it is a rational interpretation of the evidence, even if there are other possible rational

interpretations. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989); <u>Andrews</u>, 53 F.3d at

1039-40.

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ employed a five-step "sequential evaluation" process in evaluating Waller's

disability, as required. *See* 20 C.F.R. §§ 404.1520, 416.920. A claimant has the initial burden of

proving a disability in steps one through four of the analysis. *See* <u>Burch v. Barnhart</u>, 400 F.3d

676, 679 (9th Cir. 2005). Then, if a claimant establishes that he is unable to continue her past

work, the burden shifts to the Commissioner in step five to show that the claimant can perform

other substantial gainful activity in jobs existing in significant numbers in the national economy.

*See* <u>id.</u> (citing <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir.1989)); <u>Tackett v. Apfel</u>, 180

F.3d 1094, 1099 (9th Cir. 1999).

In this case, the ALJ first determined that Waller has not engaged in substantial gainful

activity since the alleged onset of her disability. Tr. 23. Second, the ALJ found that Waller

suffers from the following severe impairments: chronic neck pain, trapezius muscle strain,

scoliosis, history of right shoulder rotator cuff injury and/or bursitis, and an old injury to two

right-hand fingers. Tr. 19. Third, the ALJ determined that Waller's impairments did not meet or

equal the requirements of any impairment in the Listing of Impairments, Appendix 1, Subpart P, Regulations Part 404. Tr. 19, 23. In determining the severity of Waller's impairments, the ALJ found that Waller's allegations concerning her limitations were not fully credible. Tr. 20. The ALJ's finding at step three is in dispute. (Pl's. Opening Br. (# 9) at 8, 12-13.)

Next, the ALJ determined that Waller retained the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently; sit for a total of two hours in an eight-hour workday; and stand for a total of six hours in an eight-hour workday. Tr. 23. Based on the medical evidence in the record, the ALJ found that Waller had the following limitations: she could only occasionally stoop, crouch and bend; she could not engage in constant use of her right upper extremity for fine or gross manipulation; she cannot perform work requiring a fixed head position; and she must have the ability to reposition her head as necessary for comfort. Id. This RFC determination is in dispute. (Pl's. Opening Br. at 8-12.)

At the fourth step of the evaluation, based on the testimony of the vocational expert, the ALJ found that Waller could perform her past relevant work as an art teacher, which the VE categorized as light, skilled work; and as a community resource person, which was categorized as sedentary, skilled work. Tr. 22; *see also* 20 C.F.R. § 416.967 (defining physical exertion levels). The ALJ concluded that because these two jobs do not require the performance of work activities precluded by Waller's medically determinable impairments, so that she is able to perform her past relevant work, she is not disabled within the meaning of the Social Security Act. Tr. 22-23. These findings are in dispute. (Pl's. Opening Br. at 8.)

Because the ALJ found that Waller retained the RFC to perform her past relevant work, he was not required to proceed to step five of the disability analysis. *See* 20 C.F.R.

5 - OPINION AND ORDER

§§ 404.1520(4), 416.920(4); *see also* <u>Crane v. Shalala</u>, 76 F.3d 251, 255 (9th Cir. 1995) (a

finding at step four in the sequential evaluation process). Plaintiff contends that, because the

ALJ erred in his RFC findings and at step four in the analysis, this case should be remanded

either for an immediate award of disability benefits, or for further administrative proceedings.

(Pl's. Opening Br. at 15-16; Pl's. Reply Br. (# 12) at 5-6.)

## DISCUSSION

Plaintiff challenges the final decision of the Commissioner on the grounds that the ALJ's

determinations are not supported by substantial evidence considering the record as a whole, and

that the decision is based on improper legal standards. (Pl's. Opening Br. at 7-8.) Specifically,

plaintiff argues that the ALJ improperly applied the medical-vocational guidelines; that the

hypothetical the ALJ posed to the VE was invalid because it failed to include all of plaintiff's

limitations; that the ALJ did not completely analyze whether plaintiff's impairments met or

equaled an impairment in the Listing of Impairments, Appendix 1, Subpart P, Regulations

Part 404; that the ALJ erred by finding that plaintiff's daily activities constituted evidence that

she could sustain full-time work; and that the ALJ failed to fully and fairly develop the record.

1.      **Application of the Medical-Vocational Guidelines**

Because the ALJ found at step four of the sequential analysis that Waller was able to

return to her past relevant work as an art teacher or community resource coordinator, the

disability analysis ended. *See* 20 C.F.R. §§ 404.1520(4), 416.920(4); *see also* <u>Crane</u>, 76 F.3d at

255. Although an ALJ can apply the medical-vocational guidelines at step five of the disability

analysis to satisfy the Commissioner's burden to identify jobs existing in significant numbers in

the national economy which an individual claimant can perform, in this case there was no need

for a step five finding.  *See* <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Accordingly, the ALJ did not err when he chose not to reference the medical-vocational

guidelines.

**2.      <u>Listing of Impairments</u>**

Plaintiff argues that, at step three of the sequential analysis, the ALJ failed to give a

specific enough explanation as to why he found that her impairment or combination of

impairments did not meet or equal a "listed impairment."  The ALJ did consider the medically

acceptable clinical and laboratory findings provided by Waller, and stated that he had compared

them to the listings found at Appendix 1 of the regulations.  Tr. 19.

Unless a claimant presents evidence in an effort to establish equivalence, an ALJ is not

required to issue a decision discussing the combined effects of the claimant's impairments or

compare them to any listed impairment.  *See* <u>Burch</u>, 400 F.3d at 683.  In this case, Waller has

neither provided citations to medical evidence in the record, nor posed a theory as to how her

impairments may be combined to meet or equal a listed impairment; accordingly, the ALJ did

not err when he omitted a detailed discussion of equivalence.  *See* <u>Lewis v. Apfel</u>, 236 F.3d 503,

514 (9th Cir. 2001) (ALJ's failure to consider equivalence was not reversible error when

claimant failed to offer any equivalence theory).

**3.      <u>Residual Functional Capacity Determination</u>**

Plaintiff contends that the ALJ failed to apply the appropriate standard when he found

that her daily activities constituted evidence that she retained the residual functional capacity to

sustain full-time work.  Assessing the credibility of Waller's testimony that she regularly suffered

from disabling pain from muscle spasms in her neck and back, the ALJ wrote, "[a]lthough there

is objective evidence to establish medically determinable impairments related to the claimant's upper body, the objective medical evidence does not fully support the claimant's assertions of totally disabling symptoms." Tr. 20 He noted that the "documentary record reflects a wide range of activities, with an ability to perform some activities up to two hours. . . . [and] [s]he has been able to leave the house five days a week and has been able to vacuum daily, wash dishes daily, do laundry, shop, prepare meals, take walks, watch videos and socialize." Tr. 21. Based on these activities, the ALJ found that the record did not support the severity of Waller's reported limitations, and concluded that her "statements concerning her impairments and their impact on her ability to work are not fully credited." Tr. 23

When considering subjective pain testimony, the Ninth Circuit begins with the Cotton test. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citing Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)); *see also* Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc) (reaffirming Cotton). The Cotton test requires that the claimant produce "objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Smolen, 80 F.3d at 1281 (citations omitted).

In this case, Waller produced objective medical evidence of upper body impairments: scoliosis, cervical vertebrae fracture, degenerative changes of the thoracic spine, and bursitis in the right shoulder. *See, e.g.,* Tr. 176, 180, 181-82, 190, 194, 206, 208, 213, 216-17, 227-28, 230-31. Furthermore, medical evidence in the record indicates that these impairments "could reasonably be expected to produce some degree of symptom." *See* id. Once the requirements of the Cotton test are met, "the ALJ can reject the claimant's testimony about the severity of her

symptoms only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281.

"If the ALJ finds that the claimant's testimony as to the severity of [the claimant's] pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). In making this determination, the ALJ may consider "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [claimant's] testimony and [claimant's] conduct, [claimant's] daily activities, [claimant's] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997).

In this case, the ALJ did not address the record as a whole, but rather decided to pick and choose the portions of the record--particularly the medical record--that reflected most unfavorably on Waller's credibility, and discounted her testimony without offering specific, clear and convincing reasons for doing so. The record is clear that Waller was not working full-time when she alleged her symptoms became disabling; her last job, which she held for more than nine years, only required her to work two to four hours per day, five days per week. Tr. 104. Although no clear medical explanation exists for why her symptoms escalated in June of 2000, or why the muscle relaxant she was using ceased to be effective, there is ample evidence in Waller's medical records, summarized below, demonstrating that she was treated consistently for severe pain from muscle spasms in her neck and back.

The earliest available medical records show that, on January 21, 1998, during her annual gynecological exam, Waller began complaining of right shoulder pain to Kay Fleskes, a family nurse practitioner ("FNP"). Tr. 206, 208. During her annual exam on February 10, 1999, Waller again complained to FNP Fleskes about pain and numbness in her right hand, as well as muscle spasms and pain from scoliosis. Tr. 194. On August 30, 1999, Waller returned to FNP Fleskes seeking treatment for painful muscle spasms related to thoracic scoliosis; Fleskes noted muscle tenderness and spasms, prescribed Soma as needed, recommended that Waller continue the use of over-the-counter analgesics, and recommended that Waller file an application for medical marijuana use (since Waller indicated that such use controlled the spasms). Tr. 190. On June 29, 2000, Thomas Schwartz, M.D., evaluated Waller's current complaints of a negative reaction to Soma, reviewed her history of chronic neck pain and "recurrent paracervical and trapezius spasm," prescribed a trial of Robaxin in combination with ibuprofen, recommended continued treatments with ice, heat and other methods to reduce discomfort, and instructed Waller to follow up further with her primary care provider, FNP Fleskes. Tr. 181-82.

On July 5, 2000, FNP Fleskes wrote a letter, "to whom it may concern," stating simply that "Polly Waller has scoliosis of the spine." Tr. 180. Based on her history of treating Waller, FNP Fleskes wrote another "to whom it may concern" letter dated July 25, 2000, recommending that Waller limit her activities as follows:

    1. No repetitive activi[ti]es for more than 30 min. duration.
    2. No lifting or carrying 20 lb -- particularly holding objects out in front of self or
    above level of shoulders.
    3. No holding neck in flexion to work -- neutral position OK.
    4. No sitting in soft seated or slope-back chairs.
    5. Needs frequent rest breaks. 5 minutes every 30 minutes would be better for
    her than 20 minutes every 2 hours. Needs to be able to lay down during rest
    breaks.

> 6. Currently does not feel she is able to work more than 3 hours per day, 5 days per week without severe exacerbation of muscle spasms.

Tr. 182. Because he has an independent duty to determine Waller's residual functional capacity, the ALJ is not required to, and did not, adopt most of FNP Fleskes' recommended limitations. *See* 20 C.F.R. §§ 404.1546, 416.946. However, the longitudinal observations recorded by FNP Fleskes prior to the alleged onset of disability, and the treatment notes from Dr. Schwartz shortly after the onset date were not discredited by the ALJ, and these reports bolster Waller's symptom testimony rather than impugn her credibility.

Also, though they did not observe that Waller was suffering from muscle spasms at the time of the examinations, the agency's consultative examiners did not disbelieve her symptom reports. On February 9, 2001, Waller was consultatively examined for approximately forty-five minutes by Donald Ramsthel, M.D., who did not have Waller's prior medical records, but noted her history of muscle spasms, right shoulder pain, and right-hand pain and numbness. Tr. 214. Dr. Ramsthel noted that Waller had a shortened right leg, mild dextroscoliosis, normal ranges of motion, and that Waller did not demonstrate any muscle spasm or tenderness; he reported, "at the time I saw her, no abnormalities were noted." Tr. 216-17. He did not render a diagnosis; instead, he wrote, "I am puzzled by the nature of this problem, but the history of the chronic nature of it seems genuine." Tr. 217.

Waller was consultatively examined again on June 8, 2001, for forty-five minutes, by Robert Irwin, M.D., who had no records other than the physicians' notes and x-rays from February 9, 2001. Tr. 227. Dr. Irwin did not indicate that he disbelieved Waller's reports of chronic neck pain and muscle spasms; instead, he chronicled her symptoms, and noted that she was treating her pain with a prescription muscle relaxant and Extra Strength Tylenol. Tr. 228.

11 - OPINION AND ORDER

He also did not observe any muscle spasms or tenderness, and found Waller's ranges of motion to be normal, though he also noted her shortened right leg. Tr. 230. Dr. Irwin concluded that Waller's abnormal x-ray findings suggest the "possibility of underlying precipitants that may trigger these events [of severe neck, upper back, and shoulder spasms]," and that her reports of pain behind her eyes combined with "nausea, vomiting, diaphoresis, photophobia and phonophobia" associated with these episodes is suggestive of migraines. Id. He also found that she may possibly have carpal tunnel syndrome affecting her right hand, though physical tests for it were negative; that she possibly suffered some localized nerve trauma from an old injury to her right hand; and that her history of right arm, shoulder, and elbow pain may represent tendonitis or bursitis, though these conditions were not currently a problem. Tr. 231

On June 7, 2001, Waller was treated for neck pain and muscle spasms by FNP Fleskes, who noted that Waller continued to suffer from scoliosis, muscle spasms, and degenerative changes of the thoracic spine. Tr. 176. Fleskes referred her to the Oregon Health Sciences University ("OHSU") pain clinic, recommended that she continue to pursue vocational rehabilitation services (including physical capacity testing), and urged her to consult a physician when her symptoms became acute despite financial and transportation difficulties (Waller had to ride the bus, which required a fifteen-minute walk between stops). Id.

Renu Chawla, M.D., treated Waller for neck and back spasms on July 18, 2001. Tr. 232. He observed bilateral muscle spasms in her paracervical and trapezius muscles, and noted that her range of motion was reduced, but that her neurological responses were normal. Dr. Chawla prescribed alternating ice and heat packs, recommended increasing her dose of Methacarbemol,

gave her samples of Vioxx to try alleviating her pain, and recommended that she follow-up with her physician of record, Gloria Meyers, M.D., for further treatment.

Waller underwent a functional capacity evaluation, which was conducted by physical therapist Tyler Bohnet, on August 13, 2001. Tr. 233. Interpreting the test results, Bohnet indicated that Waller's ability to lift fell within the range of the "light" work category based on an eight-hour day; that she is capable of sitting up to six hours, standing for three and a half hours, and walking for three and a half hours. Id. Bohnet concluded that, "Ms. Waller is appropriate for full time light work." Id. However, Bohnet noted that Waller limited her positional testing after forty-four minutes, due to pain and concern that she would be too sore to function the following day, and that she also limited the material handling and non-material handling portions of the test because she again reported that she would be too sore the following day. Id. Also, Bohnet noted that Waller reported in her follow-up call twenty-four hours later that she suffered increased symptoms after the test, took pain mediation, used heat and cold packs, and had reduced symptoms the next day. Id.

Waller wrote a letter to Bohnet on November 6, 2001, to add to the record that she suffered muscle spasm pain during the testing cycles, that she had to lie down to rest her back during the forty-four minute testing period, and that she had to treat the resulting spasm cycle with prescription medication the day of the testing and into the next day because the spasms were so painful that they prevented her from engaging in work activities. Tr. 156.

Waller visited the Legacy Hospital Emergency Room on September 18, 2001, complaining of acute neck pain; a physical examination showed that she was suffering from

muscle spasms and tenderness in her neck and back. Tr. 248-49. Her treating physician

(signature is illegible) prescribed Vicodin for the pain. Tr. 249.

Between October 22, 2001, and June 28, 2002, Waller was treated multiple times for

neck pain and muscle spasms at the Fanno Creek Clinic by Gloria Meyers, M.D., and Thomas

Gragnola, M.D. Tr. 250-56. Her treatment was less than complete due to financial difficulties,

limited insurance coverage, and the need for referrals and insurance plan approvals in order to

obtain the prescribed medication, access the OHSU pain clinic and physical therapy services,

and to receive trigger-point injections. *See* Tr. 250, 252, 254. On each occasion, the treating

physician recommended a therapy plan, and gave Waller a prescription to address her complaints

of muscle spasms and related pain.

The last entry in the medical record is dated June 20, 2002, when David E. Adler, M.D.

performed a neurological consultation, documented Waller's history of neck and back pain, and

diagnosed her with "cervical muscle spasm." Tr. 257 Dr. Adler found that Waller demonstrated

tenderness in the cervical and trapezius regions, and that the muscles were hard and consistent

was spasm. Id. He ordered and reviewed a full set of lateral cervical spine x-rays, and

concluded that although there is "minimal evidence of degenerative disease. . . . [i]t remains my

impression that this patient experiences severe muscle spasm of the shoulder girdle musculature

bilaterally, as well as the cervical musculature." Tr. 258 Dr. Adler recommended a follow-up

consultation regarding the use of trigger point injections. Id.

I am mindful that the ALJ has the responsibility for making credibility determinations;

however, I reiterate that the determination must be based on a fair reading of the entire record.

Waller's pain and other symptoms were judged to be genuine by the multiple health care

professionals who were treating her; otherwise, they would have been irresponsibly prescribing

painkillers and muscle relaxants.  Their observations were consistent with Waller's symptom

reports, and do not conflict with the testimony she provided at the administrative hearing.  Other

than rejecting, in part, the functional limitations proffered by FNP Fleskes, the ALJ did not

discredit the reports of any of the physicians who treated or examined Waller.  The physical

capacity evaluation in which therapist Bohnet concluded that Waller could perform work

activities at a light exertional level on a full time basis--upon which the ALJ based his decision

to discredit Waller's testimony–was the only inconsistent report, and the ALJ failed to note that

Waller had to lie down and rest her back before she could complete the testing cycle.  *See* Tr. 18,

21.

Waller did not claim that she was "unable to perform all work functions," as the ALJ

concluded.  Tr. 22.  Rather, she claimed that she was unable to <u>sustain</u> such activities more than

part-time, and that her physical limitations severely limited her job opportunities.  *See* Tr. 31-32,

103.  "The Social Security Act does not require that claimants be utterly incapacitated to be

eligible for benefits."  <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989).  The Commissioner

must evaluate the claimant's "ability to work on a <u>sustained</u> basis." 20 C.F.R. § 404.1512(a)

(emphasis added).  "Occasional symptom-free periods--and even the sporadic ability to

work--are not inconsistent with disability."  <u>Lester v. Chater</u>, 81 F.3d 821, 833 (9th Cir. 1996)

(citations omitted).  The mere fact that Waller carried on certain daily activities, such as grocery

shopping, preparing meals, some limited exercise, and attendance at social events does not

detract from her credibility as to her overall disability.  *See* <u>Vertigan v. Halter</u>, 260 F.3d 1044,

1049-50 (9th Cir. 2001).  Also, the ALJ failed to note, or to follow up on, Waller's report of a

failed work attempt at the Portland State University bookstore; (Tr. 31-32) she even reported to her doctor that she had to quit on her third day due to bad neck pain.  Tr. 254.

Based on my review of the record, I conclude that the ALJ gave insufficiently clear and convincing reasons for discounting Waller's subjective pain and symptom testimony, so that such testimony was improperly rejected.  Because Waller's testimony was improperly rejected, the ALJ's RFC determination is flawed, since it fails to incorporate all of her credible limitations, such as her need for frequent rest breaks, and her limitations relating to the extended duration of disabling pain and muscle spasms.

In addition, the ALJ's RFC determination is flawed because he did not request medical source statements before assessing Waller's limitations.  Medical source statements are "medical opinions submitted by acceptable medical sources . . . about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis."  SSR 96-5p, *available at* 1996 WL 374183, at *4.  This ruling states that an ALJ is "generally <u>required</u> to request" such statements.  <u>Id.</u> (emphasis added).  In this case, the record shows that ALJ did not obtain the type of medical source statements contemplated by the ruling.

The first source the ALJ cited is a memo from a reviewing orthopedic physician who questioned the state agency's initially favorable vocational decision, finding that none of the notes from Waller's treatment providers establish "a medically determinable physical impairment to account for these 'episodic' attacks of pain and muscle spasm, nor do the findings of Dr. Ramsthel."  Tr. 220.   The second source cited is an unsigned memo from the Disability Quality Branch re-evaluating Waller's claim, and ordering the file to be sent back to the Oregon

Disability Determination Services to obtain further documentation from Waller's most recent

treating and examining physicians, particularly regarding their opinions of her physical

capacities and the relation of her allegations of pain to the identified impairments.  Tr. 221-22.

The third source cited is a residual functional capacity assessment form filled out by state agency

disability analyst Kathy Norton, who is not a physician, and therefore is not an "acceptable

medical source." *See* C.F.R. §§ 404.1513(a), 416.913(a).  In addition, Norton's assessment was

based on a review of Waller's medical records, and did not include treating or examining source

statements addressing Waller's physical capacities and the relationship of her reported symptoms

to her underlying impairments.

These sources are not a proper basis for the ALJ's RFC determination, because they did

not provide the data contemplated by the applicable ruling; in fact, the first two sources cited by

the ALJ called for additional development of the medical record in this case.  Although the lack

of a medical source statement will not necessarily make a report incomplete, *see* C.F.R.

§ 404.1513(b)(6), plaintiff's point that the ALJ failed to properly develop the record is well

taken.

"In Social Security Cases, the ALJ has a special duty to fully and fairly develop the

record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d

441, 443 (9th Cir. 1983).  When a claimant is not represented by counsel, as in this case, the ALJ

has a special duty to scrupulously and conscientiously probe into, inquire of, and explore for all

the relevant facts.  He must be especially diligent in ensuring that favorable as well as

unfavorable facts and circumstances are elicited.  Thompson v. Schweiker, 665 F.2d 936, 941

(9th Cir 1982); Brown, 713 F.2d at 443.  Here, particularly when there was no medical expert

called to testify at the hearing, the ALJ should have contacted Waller's treating and examining

medical sources before making findings about what job functions she could perform, and for

what duration. Without such information, the ALJ's RFC determination is incomplete, the

hypothetical he developed for the VE is inaccurate, and his conclusion at step four of the

disability analysis (that Waller could perform her past relevant work) lacks foundation. Further

development of the record to obtain medical source statements about what plaintiff can still do--

despite her impairments--is necessary before reaching the ultimate issue of whether or not she is

disabled. *See* C.F.R. §§ 404.1513(b)(6), 416.913(b)(6).

The decision whether to remand for further proceedings or to award benefits is within the

court's discretion. *See* <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987); *see also* <u>Ramirez v.</u>

<u>Shalala</u>, 8 F.3d 1449, 1455 (9th Cir. 1993). The Ninth Circuit has articulated standards by which

this court is to decide whether to remand for further proceedings or simply for an award of

benefits. A case should be remanded for an award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues that must be resolved before a
> determination of disability can be made, and (3) it is clear from the record that the
> ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d at 1292; *see also* <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000).

In this case, a remand for an award of benefits is inappropriate because there are still

outstanding issues with regard to Waller's functional capacity which must be resolved. Without

medical source statements or expert medical testimony in the record describing the relationship

between Waller's impairments and her symptoms, and some sort of medical opinion as to the

functional limitations reasonably expected to result from her established impairments, any

attempts by this court to resolve the ambiguities in the record, or to reach a conclusion as to the

ultimate issue of disability, would be speculative at best. Even if Waller's reports regarding her symptoms were fully credited, it is still not clear from the record whether she is disabled without further vocational findings. Accordingly, a remand for further proceedings to develop the record is appropriate. *See* Benecke, 379 F.3d at 593.

Thus, I conclude that a remand for an immediate award of benefits is not appropriate because outstanding issues remain to be resolved and it is not clear from the record that the ALJ would be required to find that plaintiff is disabled. Consequently, in the exercise of my discretion, I remand this action to the Commissioner for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

## CONCLUSION

For the foregoing reasons, and based on my review of the record, the Commissioner's decisions denying Waller disability insurance benefits ("DIB") under Title II, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act are REVERSED and this matter is REMANDED to the Commissioner for further proceedings consistent with this opinion.

DATED this 11th day of January, 2006.

/s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge